1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEILANI LYNN KNUPP,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner of
Social Security, [1]

                              Defendant.

Case No. 3:12-cv-05384-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

        Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.

Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the

parties have consented to have this matter heard by the undersigned Magistrate Judge.  After

reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons

set forth below, defendant's decision to deny benefits should be affirmed.

                    FACTUAL AND PROCEDURAL HISTORY

        On October 2, 2008, plaintiff filed an application for disability insurance benefits and

another one for SSI benefits, alleging in both applications that she became disabled beginning

November 1, 2006, due to depression and anxiety. See Administrative Record ("AR") 19, 129,

133, 169.  Both applications were denied upon initial administrative review on February 25,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly.**

ORDER - 1

2009, and on reconsideration on May 22, 2009. <u>See</u> AR 19.  A hearing was held before an administrative law judge ("ALJ") on September 8, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. <u>See</u> AR 37-68.

In a decision dated October 21, 2010, the ALJ determined plaintiff to be not disabled. <u>See</u> AR 19-31.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 7, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). <u>See</u> AR 1; <u>see also</u> 20 C.F.R. § 404.981, § 416.1481.  On May 4, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. <u>See</u> ECF #3.  The administrative record was filed with the Court on August 24, 2012. <u>See</u> ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing her residual functional capacity; (3) in finding her to be capable of returning to her past relevant work; and (4) in finding in the alternative that she is capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision to deny benefits should be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler</u>,

ORDER - 2

785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security

Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the

proper legal standards were not applied in weighing the evidence and making the decision.")

(citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

supported by inferences reasonably drawn from the record.").  "The substantial evidence test

requires that the reviewing court determine" whether the Commissioner's decision is "supported

by more than a scintilla of evidence, although less than a preponderance of the evidence is

required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence

admits of more than one rational interpretation," the Commissioner's decision must be upheld.

Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

sufficient to support either outcome, we must affirm the decision actually made.") (quoting

Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that
> which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
> substantial evidence, the courts are required to accept them.  It is the function of the
> [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
> not try the case de novo, neither may it abdicate its traditional function of review.  It must
> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
> rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Where the medical evidence in the record is not conclusive, "questions of credibility and

resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

within this responsibility." Id. at 603.

      In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

"logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

F.2d 747, 755, (9th Cir. 1989).

      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

only be rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

ORDER - 4

Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.      Dr. Corpoloago and Dr. Neims

Plaintiff challenges the ALJ's following findings concerning the medical source evidence in the record:

> . . . In September 2008, Dr. [Michael] Corpoloago diagnosed major depressive disorder, in full remission, recurrent, and panic disorder, without agoraphobia. Dr. Corpoloago opined that the claimant had moderate limitations in performing complex tasks, learning new tasks, and exercising judgments and making decisions. With respect to social factors, Dr. Corpoloago opined that the claimant had moderate limitation in her ability to interact appropriately with the public and to control physical or motor movements and maintain appropriate behavior. Dr. Corpoloago opined that the claimant had marked limitation in her ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting (Exhibit 4F). In September 2008, Dr. [Dan] Neims diagnosed, [sic] panic disorder, with agoraphobia, and anxiety disorder NOS. Dr. Neims opined that the claimant had mild to moderate limitation in the domains of cognitive factors. Dr. Neims stated that the claimant had marked limitations in her ability to interact appropriately with public and tolerate the pressures and expectations of a normal work setting. Dr. Neims opined that the claimant had moderate limitations in other domains of social factors (Exhibit 5F). In July 2010, Dr. Neims diagnosed anxiety disorder NOS, rule-out bipolar disorder NOS, and rule-out mood and

anxiety disorder secondary to persisting effects of methamphetamines, in remission, polysubstance dependence, in remission. Dr. Neims stated that the claimant had marked limitations in her ability to interact with [the] public and to respond appropriately to and tolerate the pressures and expectations of a normal work setting (Exhibit 19F).

The undersigned accords partial weight to the opinions of Dr. Corpolaogo and Dr. Neims. The undersigned agrees with their assessments of cognitive factors because they are generally consistent with each other and supported by mental status examinations. The undersigned, however, gives limited weight to their assessments of social factors. First, their assessments are inconsistent with the longitudinal treatment notes, which indicate that the claimant's anxiety and depressive symptoms are stable when she is on psychiatric medications. Second, their assessments are inconsistent with the claimant's activities. The claimant cares for her personal hygiene and grooming, prepares her own meals, does her own laundry and dishes, performs household cleaning, and shops for herself. She goes out up to two times per week, can go out alone, spends time with her sister, mother, and nephew, has friends with whom she stays with, and gets along with family and friends. For the past couple of years, she has helped her sister, who had medical issues, care for her child, who is currently about two years old (Exhibit 5F/4). She was able to interact appropriately with coworkers, supervisors, and customers in her past jobs (Exhibits 7E, 19F). Finally, to the extent that Dr. Corpolaogo and Dr. Neims relied on the claimant's subjective complaints, their assessments of social factors are further rejected. As discussed above, the claimant's subjective complaints are not fully credible. The claimant has provided inconsistent statements about her bipolar symptoms, psychotic symptoms, [post traumatic stress disorder] PTSD symptoms, agoraphobia, panic attacks, and substance use.

AR 27. First, plaintiff asserts that contrary to the ALJ's findings, the record shows that while she improved on her medications she never achieved stability. But as succinctly summarized by the ALJ earlier in her decision, the record shows that for the most part it was only when plaintiff did not take her medications that she had an increase in her symptoms:

While the claimant has definite problems with mood and anxiety issues, her symptoms are more stable when she is compliant with medications. For instance, after starting Paxil in June 2008, she reported in August 2008 that her anxiety had improved. Although she continued to complain of depression, she denied any suicidal ideation or feelings of hopelessness. Her Paxil dosage was increased from 20 mg to 40 mg (Exhibit 7F/1-2). In December 2008, she stated that the increased dosage of Paxil was really working well. She denied any symptoms of depression or anxiety (Exhibit 7F/4-5). In February 2009,

ORDER - 6

however, she reported that she had discontinued all her medications, including Paxil (Exhibit 9F/1). She did not resume her medications until May 2009, when she was prescribed Paxil, trazodone, and Seroquel. Later that month, she reported having increased sleep, decreased instrusive thoughts, less irritability, and improved relationships with the addition of Seroquel (Exhibit 17/18). In June 2009, she denied having any worsening anxiety or depression (Exhibit 17F/19). In November 2009, she stated that she had been feeling a lot better since adding Seroquel to her medication regimen. On the mental status examination, she appeared fully oriented. Her affect was normal. She denied any mood symptoms (Exhibit 18F/5). In July 2010, she reported that she was still taking Paxil, Seroquel, and trazodone. She denied any suicidal ideation. She reported having a dramatic improvement in her panic symptoms over the past 12 months. Apart from some rocking behavior, the examiner noted minimal overt signs of anxiety (Exhibit 19F/8).

AR 24-25; see also AR 280, 303-06, 310, 345, 349, 354, 361-62, 366-67, 369-70, 378, 380-81.

Further, although the record does show some symptoms continued even during those times when plaintiff was compliant with her medications, it also reveals again as pointed out by the ALJ that overall her mental health condition improved significantly.

The undersigned also finds the ALJ did not err in giving little weight to the assessment of social factors provided by Dr. Corpoloago and Dr. Neims to the extent they relied on plaintiff's subjective complaints. A physician's opinion that is premised to a large extent on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 601. The ALJ in this case determined plaintiff to be not fully credible (see AR 24-26), a determination plaintiff has not challenged here.[3] The record, furthermore, indicates that the limitations Drs. Corpoloago and Neims assessed in terms of social factors are largely premised on what plaintiff reported to

---

[3] Plaintiff does challenge the ALJ's finding that she has provided inconsistent statements about her mental health symptoms, asserting that those statements are consistent with treatment notes in the record, and thus that this finding is not a proper basis for rejecting the opinions of Dr. Corpoloago and Dr. Neims. But at best plaintiff's evaluation of that evidence is no more reasonable than the ALJ's. See AR 25. Accordingly, the evaluation the ALJ provided must be upheld. See Allen, 749 F.2d at 579 (if evidence admits of more than one rational interpretation, Commissioner's decision must be upheld). In addition, even if plaintiff's evaluation thereof can be said to be more reasonable, she has not challenged any of the ALJ's other stated reasons for discounting her credibility.

ORDER - 7

them.  See AR 279, 287, 294-95, 377, 380-81.  The Court does agree the ALJ erred in rejecting

those limitations on the basis of plaintiff's activities,[4] as the record fails to show such activities

are necessarily inconsistent therewith.  See AR 53-59, 61-62, 192-97, 201-08, 242-43, 245, 248,

310.  Nevertheless, as just discussed the ALJ gave two other, valid reasons for rejecting them.

B.    Dr. Raney

Plaintiff next takes issue with the ALJ's evaluation of the following medical opinion

source evidence in the record:

> In February 2009, James O. Raney, M.D., a consultative examiner, diagnosed
> bipolar disorder, I, severe, with psychotic features, cannabis abuse, in
> remission, and amphetamine abuse, in remission.  Dr. Raney assigned the
> claimant a [global assessment of functioning] GAF score [of] 30, indicating
> that she had some impairment in reality testing.  Dr. Raney opined that, when
> euthymic, the claimant could perform simple, repetitive, detailed, and
> complex tasks.  Dr. Raney stated that, when euthymic, the claimant could
> accept instructions from supervisors, interact with coworkers and public, and
> perform work activities on a consistent basis.  Dr. Raney opined that the
> claimant could not currently maintain regular attendance in the workplace or
> complete a normal workday or workweek without interruptions from a
> psychiatric condition.  Dr. Raney stated that the claimant's problem was
> treatable and that her condition would improve with appropriate treatment
> within the next 12 months (Exhibit 9F).

> The undersigned accords partial weight to Dr. Raney's opinion.  The
> undersigned agrees that the claimant's symptoms are treatable.  At the time of
> her evaluation with Dr. Raney, the claimant had discontinued all her
> medications.  Indeed, her anxiety and mood symptoms improved significantly
> after she subsequently resumed her medications.  With respect to Dr. Raney's
> opinion that the claimant could not work at the time, the undersigned gives it
> limited weight.  This opinion was based largely on the claimant's subjective
> complaints, which, as established above, are not fully credible.  For instance,
> she told Dr. Raney that she had experienced bipolar symptoms for the past six
> years.  Contrary to this report, however, she had consistently denied any
> manic symptoms throughout medical appointments and psychiatric
> evaluations in 2008.  She also told Dr. Raney that she experienced visual and
> olfactory hallucinations.  Yet, when seen in January 2009, she endorsed only a

---

[4] See Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that other evidence of claimant's ability to function, including reported activities of daily living, contradicted that conclusion).

ORDER - 8

history of auditory hallucinations (Exhibit 17F/6).  And, when seen in
December 2008, she denied any types of hallucinations (Exhibit 7F/4-5).

AR 28-29.  Plaintiff argues the ALJ erred in stating she consistently denied having any manic

symptoms during 2008, pointing out that such symptoms were noted by Dr. Corpolaogo and Dr.

Neims.  See AR 278, 286.  Overall, though, treatment records from that time period are largely

devoid of such reported symptoms, or indicate that they were reported at times during which

plaintiff was not fully compliant with prescribed medication, including as noted by the ALJ at

the time Dr. Raney saw her.  See AR 303-06, 310, 344-52, 354, 361-62, 366-67, 369-70.  As for

reported hallucination, again as noted by the ALJ, plaintiff only reported having had them in the

past, not currently.  See id.  More importantly, though, is the fact that the ALJ stated he rejected

Dr. Raney's opinion on the basis of that he relied largely on plaintiff's self-reporting, in regard to

which as discussed above the ALJ properly found to be less than fully credible for reasons other

than just a lack of consistent reporting.  The record, furthermore, supports the ALJ's rejection of

Dr. Raney's opinion on this basis.  See AR 309-12.

C.      Dr. McRae and Dr. Collingwood

Lastly in terms of the medical evidence in the record, plaintiff argues the ALJ erred in

finding in relevant part as follows:

In October 2008, John McRae, M.D., authorized the claimant's approval for
GAX [disability benefits].  Based on [the state agency] evaluations of Dr.
Corpolaogo and Dr. Neims, Dr. McRae stated that the claimant could not
work because of her ability to deal with ordinary workplace stressors and
expectations (Exhibit 6F/1).

The undersigned accords no weight to Dr. McRae's decision.  Dr. McRae
based his decisions on the [state agency] opinions of Dr. Corpolaogo and Dr.
Neims, neither of which the undersigned fully adopts.

. . .

In February 2009, Dr. [Cynthia] Collingwood, the State agency psychological

ORDER - 9

consultant, opined that there was insufficient evidence to establish a severe mental impairment prior to September 2008. For the period after September 2008, Dr. Collingwood stated that the claimant could understand, remember, and carry out simple, routine tasks and some complex instructions. Dr. Collingwood opined that the claimant could maintain attention on simple, routine tasks for up to two hours. Dr. Collingwood stated that the claimant would be able to adhere to a schedule, sustain a routine, and complete a normal workday and workweek with a few interruptions. Dr. Collingwood opined that the claimant would work best with no public contact. Dr. Collingwood opined that the claimant could accept instruction/criticism from a competent supervisor and work with coworkers (Exhibit 12F). In May 2009, John Robinson, Ph.D., another State agency psychological consultant, affirmed the opinion (Exhibit 15F).

The undersigned accords significant weight to the [sic] Dr. Collingwood's opinion because it is generally consistent with the overall evidence. . . .

AR 28-29. Plaintiff argues that because Dr. Collingwood did not have an independent basis for the findings contained in her opinion, that opinion does not constitute substantial evidence, and that therefore the ALJ could not reject the opinions of Dr. Corpolaogo and Dr. Neims based on Dr. Collingwood's opinion. Plaintiff goes on to argue that because Dr. Collingwood, like Dr. McRae, based her opinion on those of Drs. Corpolaogo and Neims, the ALJ should have rejected Dr. Collingwood's opinion for this reason as well. But as defendant points out, Dr. Collingwood reviewed other evidence in the record, including plaintiff's treatment records. See AR 326, 330. As discussed above, furthermore, the great weight of that evidence supports the ALJ in both rejecting the opinions of Dr. Corpolaogo and Dr. Neims and in discounting plaintiff's subjective complaints and allegations of disability. Accordingly, Dr. Collingwood's opinion does constitute substantial evidence, and as the ALJ found is also more generally consistent with the objective medical evidence in the record overall.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found

ORDER - 10

disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found in relevant part:

**. . . [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels.  The claimant retains the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: she can understand, remember, and carry out 2 to 3 step instructions required of jobs classified at a level of svp 1 and svp 2 or as unskilled work; she would have the average ability to perform sustained work activities (i.e., can maintain attention and concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence; she can make judgments on simple, work-related decisions; she can respond**

ORDER - 11

**appropriately to supervisors, coworkers, and deal with change all within a stable work environment; and she cannot deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process.  Incidental contact with the general public is not precluded.**

AR 23 (emphasis in original).  Plaintiff argues that the medical evidence in the record requires a more restrictive RFC assessment.  But plaintiff does not explain what that more restrictive assessment should be, nor for the reasons discussed above has she established that the ALJ erred in evaluating the medical evidence in the record.  Accordingly, the undersigned finds no error in the ALJ's assessment of plaintiff's residual functional capacity in this case.

III.      The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of returning to her past relevant work as both a sandwich maker and a bakery helper as those jobs "are generally performed in the national economy." AR 29.  This finding was based on the vocational expert's testimony that plaintiff could do so. See AR 29, 65.  Plaintiff argues the ALJ erred in relying on the vocational expert's testimony here.  Plaintiff has the burden of showing that she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  Specifically, plaintiff argues the vocational expert failed to explain: (1) how the limitation to only incidental contact with the public is consistent with the description of the job of bakery worker contained in the Dictionary of Occupational Titles ("DOT"); and (2) how the DOT's description is consistent with that job as plaintiff performed it.

The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  In addition, the ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information contained

ORDER - 12

in the DOT. See Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.  Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.  The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

The undersigned finds no errors here.  First, as pointed out by defendant the DOT provides that in regard to the job of bakery helper, performing tasks involving people is "Not Significant." DOT 524.687-022, 1991 WL 674401.  The same is true for the job of sandwich maker. See DOT 317.664-010, 1991 WL 672749.[5]  A limitation to only incidental contact with the public thus is not inconsistent with what the DOT provides here in regard to having to deal with people.  Accordingly, no actual conflict between the testimony of the vocational expert and the information contained in the DOT exists requiring explanation by that expert at the hearing or resolution by the ALJ in her decision.

Second, as noted above, based on the vocational expert's testimony the ALJ found plaintiff could perform her past relevant work as generally performed in the national economy, rather than as actually performed in the past, which was not improper for the ALJ to do.[6] See Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (to make non-disability determination at

---

[5] Plaintiff argues the description of the job of sandwich maker contained in the DOT should be viewed as providing that working with the public is an essential element of that job, since the DOT states that it involves both preparing sandwiches "to individual order of customers" and "[r]eceiv[ing] sandwich orders from customers." Id.  Plaintiff asserts this means the order comes directly from the customer.  But the DOT's description nowhere mentions that sandwich orders come directly from the customer in all or even most cases.  Further, even if direct contact with customers reasonably can be inferred as a requirement of the job here, there is no indication that any more than incidental contact with the public would be required, particularly given the express notation in that description that people skills are "Not Significant."

[6] Accordingly, the undersigned finds no error in the ALJ's failure to inquire as to why the vocational expert testified that plaintiff could perform the job of bakery worker, which the DOT describes as involving performing tasks along a conveyor line, when she herself never described use of such a line in her past job.

ORDER - 13

step four, ALJ must find claimant can perform either "[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy"); see also SSR 82-61, 1982 WL 31387 *2 ("[I]f the claimant cannot perform the . . . functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'").

<u>CONCLUSION</u>

For the reasons discussed above, the Court finds the ALJ properly concluded plaintiff was not disabled at step four of the sequential disability evaluation process based on her being able to return to her past relevant work.[7]  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 28th day of May, 2013.

Karen L. Strombom
United States Magistrate Judge

---

[7] Because the Court finds the ALJ did not err in finding plaintiff to be disabled at this step, the ALJ was not required to go on to determine whether plaintiff was capable of performing other jobs existing in significant numbers in the national economy and thus whether she was not disabled at step five, even though the ALJ did so in the alternative. See AR 29-30.  There is no need, therefore, to address the errors plaintiff asserts the ALJ made at step five, and the Court accordingly declines to do so.

ORDER - 14